IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMHERST COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>P. O. Box 390<br>Amherst, Virginia 24521<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL B. MUKASEY<br>Attorney General of the<br>United States of America,<br>GRACE CHUNG BECKER,<br>Acting Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT FOR DECLARATORY RELIEF UNDER THE VOTING RIGHTS ACT

Amherst County, Virginia, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff Amherst County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). Amherst County is near the geographic center of Virginia in the Central

Virginia region and within the Lynchburg metropolitan area. The James River borders the county on the south and east, with the crest of the Blue Ridge Mountains forming the western boundary. The Piney River comprises much of the county's northern boundary. The County has a land area of approximately 475 square miles.

3. According to the 2000 census, Amherst County, Virginia has a total population of 31,894. Of this number, 6331 persons (or 19.8%) are African-American and 306 (or 1%) are Hispanic. The voting age population of the County (18 years of age or older), according to the 2000 census, is 24,408. Of this number, 4596 (18.8%) are African-American and 223 (0.9%) are Hispanic.

4. The Amherst County Board of Supervisors is the governing body that formulates policies for the administration of government in Amherst County. It is comprised of five members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer. The general day to day operations of Amherst County are controlled by the Office of the County Administrator. Since 1999, one member of the Board of Supervisors has been an elected African-American.

5. Located within Amherst County is the Towns of Amherst (hereafter, the "Town"). The Town of Amherst, according to the 2000 census, has a total population of 2251. Of this number, 678 (30%) are black and 35 (1.5%) are Hispanic.

6. Residents of the Town are eligible to participate in town elections and in County elections. The Town is governed by a five-member Town Council and a mayor, who are all elected at large every two years.

7. The Amherst County School Board is a five-member body appointed by the Amherst County Board of Supervisors. Currently, four of the five members of the school board are African-American.

8. Amherst County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

9. Amherst County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

10. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the County's voting age population is registered to vote. As of February 2008, there were 18,170 registered voters in Amherst County.

11. There are presently a total of twelve polling locations in Amherst County (which includes a central absentee voting precinct), located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

12. African-American candidates have had a long history of electoral success in Amherst County. The following three African-American candidates have been elected to the Board of Supervisors: Stanley Harris (District 1), Roy Wood (elected in 1999 from District 4), and Mr. Leon Parish (elected in 2001 from District 5). Mr Parish was re-elected to the Board of Supervisors in 2005 and currently serves on the Board.

13. The County's General Registrar of Voters from 1986 to 2001 was an African-American female, Ms. Francine Brown. Presently, the Secretary of the Amherst County Electoral Board is Ms. Wanda Spradley, who also is African-American.

14. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy

standards established in the Voting Rights Act. This exemption process is known as "bailout".

15. In 1982, Congress made changes in the exemption standards of the Voting Rights Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. §1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

16. As described herein, plaintiff Amherst County has fully complied with the provisions of Section 4 of the Act.

17. As a political subdivision of the Commonwealth of Virginia, plaintiff Amherst County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Amherst County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

18. Since 1996, Amherst County has submitted twelve (12) voting changes to the United States Department of Justice seeking preclearance under Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Not a single objection was interposed by the Department of Justice to any of the changes submitted.

19. Within the ten years preceding the filing of this action, Amherst County has not enforced any voting changes prior to Section 5 preclearance. Nor has the Attorney General interposed a Section 5 objection to any change affecting voting in Amherst County within the past ten years. The County has not sought judicial preclearance of any voting changes in this Court.

20. Voter registration opportunities in the County are readily and equally available to all citizens. The voter registration office for the County is located on the 1st floor of the Amherst County Courthouse Complex, a location that is

convenient for all County residents. The voter registration office is open 8:30 a.m. to 4:30 p.m. weekdays and certain Saturdays prior to each election.

21. Voters in Amherst County may also register by mail, and voter registration applications are available at locations convenient to voters throughout the County. In addition, voter registration applications are available at the Amherst County Public Library, the Amherst County Public Library Madison Heights Branch, the Amherst County Treasurer's Office, and the Amherst County Commissioner of The Revenue's Office.

22. In 2004, when Amherst County was in the process of changing voting machines, the General Registrar visited different churches every weekend during May, June, and July. The majority of these churches were churches where African-Americans were the majority of congregants. The Registrar also goes to the local high school most years to demonstrate the voting process and explain voter registration to the senior class. The Registrar also provides voter registration forms to the government teacher so that the students can become registered to vote. In 2007, the General Registrar visited Monelison Middle School in Amherst County, and provided the students with information about voting, the process, and demonstrating the voting machines.

23. The opportunity to become a registered voter in Amherst County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at all public assistance agencies in Amherst County. While in past years most voters became registered at the County's voter registration office, the implementation of the

NVRA in Virginia over the last decade has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Amherst County has been made more convenient and available as a result of implementation of the NVRA.

24. Voter registration opportunities in the County are readily and equally available to all citizens.

25. The number of registered voters in the County has steadily risen over the last few years. In 1998, for example, there were 15,067 registered voters in the County. By 2003, the number of registered voters had grown to 16,955. The number of registered voters in the County has continued to grow. As of February 2008, there were 18,170 registered voters in the County. Thus, from 1998 to 2008, the total number of registered voters in the County has grown by 20.6% (from 15,067 in 1998 to 18,170 in 2008).

26. Voter turnout in elections within Amherst County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last two Presidential elections (2000 and 2004), for example, 73% and 72.6% of the County's registered voters turned out to vote, respectively. In the General Elections for state and county offices held in November 1999, 2001, 2003, and 2005, 37.4%, 48.9%, 37.3%, and 47.3% of the County's registered voters turned out to vote, respectively.

27. Amherst County has a three-member Electoral Board, appointed pursuant to Virginia state law. The Electoral Board is comprised of one African-American

member and two white members. Over at least the last ten years, no person recommended to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years. As noted above, see paragraph 15, *supra*, the Electoral Board Secretary, Ms. Wanda Spradley, is African-American, and has served on the Board since 2002.

28. Amherst County has a long history of appointing African Americans to work at the polls as poll officials. As of 2007, Amherst County employed 39 African-Americans persons as poll officials (out of a total of 112). The percentage of African-American poll workers (33%) is more than the percentage of Amherst County's African-American voting age population (18.8%).

29. No person in Amherst County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

30. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Amherst County as a prerequisite to either registering or voting for at least the preceding ten years.

31. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Amherst County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against Amherst County alleging such denials or abridgments of the right to vote.

32. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

33. Amherst County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Amherst County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors or to the Amherst Town Council.

34. Federal examiners have never been appointed or assigned to Amherst County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

35. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Amherst County within the last ten years, neither the County nor any of its governmental units have had any occasion to take any action eliminating such activity.

36. Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices." A Notice of Intent to Seek a Bailout was published by the County in the *Amherst New Era Progress*, the County's weekly newspaper, on November 29 and December 6, 2007. This Notice was also posted at all post offices in the County, at the County courthouse in Amherst, at the County social services office, and at the office of the General

Registrar of Voters. Amherst County intends to publish a settlement of this action in the event that Defendants consent to bailout.

37. The allegations set forth in paragraphs 18 through 36, above, if established, entitle plaintiff Amherst County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

WHEREFORE, plaintiff Amherst County respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that plaintiff Amherst County and all governmental units within the County are entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

**For the Plaintiff AMHERST COUNTY:**

*/s/ J. Gerald Hebert*

J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673 (Office)
DC Bar No. 447676
Email: jghebert@comcast.net

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Amherst County, VA

## DEFENDANTS

Michael Mukasey, Attorney General; Grace Chung Becker, Assistant Attorney General

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Amherst, VA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

J. Gerald Hebert
J. Gerald Hebert, PC
5019 Waple Lane
Alexandria VA 22304

ATTORNEYS (IF KNOWN)

Christy McCormick/Steven Wright:
Room 7254 - NWB, 950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ◉ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☒ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
42 U.S.C. 1973b (seeking an exemption from the special provisions of the Voting Rights Act, known as a bailout action)

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint
JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE May_____    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.